UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ROXIE L. SANDERS,<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Respondent. | Case No. 1:13-cv-00528-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Roxie Sander's Petition for Review (Dkt. 1), filed December 17, 2013, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On February 28, 2011, Petitioner Roxie Sanders ("Petitioner") applied for Social Security Disability Insurance and Supplemental Security Income Benefits, alleging a disability onset date of August 22, 2008. (AR 13, 164-66.) Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 109-121.) Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On July 18,

2012, ALJ Kurt Schuman held a hearing at which time Petitioner, represented by attorney Timothy Cluff, appeared and testified. (AR 33-34.) Vocational expert Kent Granat and medical expert James Bruce also appeared and testified. (*Id*.) At the time of the hearing, Petitioner had past relevant work as and administrative clerk and records clerk. (AR 19.)

On August 14, 2012, the ALJ issued a decision[1], denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 13-20.) Petitioner timely requested review from the Appeals Council on September 19, 2012 (AR 8-9) The Appeals Council then denied review on October 22, 2013 (AR 1-3) rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred by failing to (1) accord appropriate weight to the opinions of Petitioner's treating physician; (2) properly assess Petitioner's credibility; and (3) properly consider a statement from Petitioner's mother.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is

---

[1] Lloyd E. Hartford signed "for Kurt Schuman." AR 20.

substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not

substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done

for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA after February 28, 2011, the application date. (AR 15.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: degenerative disc disease of the cervical spine; fibromyalgia; and migraine headaches. (AR 15.) However,

the focus of Petitioner's appeal is her limitations based on migraine headaches, not on her other conditions.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 17.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in

substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. The ALJ found that Petitioner has the residual functional capacity to perform light work, except she can occasionally climb ladders, ropes or scaffolds, frequently climb ramps or stairs and balance, crouch kneel, and crawl; occasionally stoop and reach overhead, bilaterally; and perform frequent, bilateral handling and fingering. However, she is limited in that she should avoid concentrated exposure to bright sunshine and flashing lights, excessive noise and vibration, and should avoid concentrated use of moving or dangerous machinery and exposure to unprotected heights. AR 29. The ALJ found that Petitioner was capable of preforming past relevant work as an administrative clerk and record clerk. (AR 19).

Because the ALJ found that Petitioner could perform past relevant work, he did not consider the fifth and final step, *i.e.*, whether the Commissioner demonstrate that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

**B.   Analysis**

   **1.   Petitioner's Credibility**

Petitioner contends that the ALJ's credibility assessment is not supported by substantial evidence. The ALJ found "that the claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 19.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where, as here, the Petitioner has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, the Court reviews the ALJ's rejection of her testimony for specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

In considering Petitioner's limitations, the ALJ rested his credibility determination on his finding that Petitioner is "independent in her activities of daily living." (AR 18.) He explained:

> The claimant takes care of her four children when she has custody (she shares custody with her ex-husband). Two of her children have special needs. The claimant drives the kids to school and volunteers for school functions. In addition, the claimant is able to cook, clean and go to the grocery store.

(AR 18.) The ALJ may properly consider daily activities in assessing the Petitioner's credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). However, Petitioner's testimony in this case clearly reflects a more limited range of daily activities,

which are directly impacted by the severity of her migraines, than was considered by the ALJ. Specifically, Petitioner explained:

- "[I]t's very rare that I'm ever headache free. So there have been times where I have been so severe that I can't drive [the kids to school], in which case I call my ex-husband and tell him he has to come over and drive them." (AR 61.)

- "I do *try* to volunteer at their school. . . . But . . . those are on the days that I'm functioning well or moderate." (AR 66) (emphasis added). "[T]he places that I volunteer . . . the teachers know in advance that there will be times . . . I will not be able to be [there]." Petitioner gave an example of calling her son's drama teacher to let her know she could not make it because she had a migraine. (AR 66.) She also explained that she is "careful about where [she chooses] to volunteer," selecting places where they can function without the volunteer if she cannot make it. (AR 67.)

- "I do not cook all the time depending on the level of pain I'm in." (AR 68.) "On days that are moderate, moderately uncomfortable I do things that are easier like chicken strips and tater tots. On days that I can't function at all my mom or [boyfriend have] to come in, and they have to provide dinner for [the kids] because I end up having to take a shot [of medicine] and go to straight to bed." (AR 68-69.) "So, somebody else has to come in and take care of my kids." (AR 69.)

When the Petitioner has severe headaches, she has her mom or boyfriend help with her kids.[2] (AR 73). She testified that her mother and boyfriend come over "a lot" to help. (AR 74). Additionally, Petitioner has her children with her not every week, but every other week. If she picks her kids up on her Friday and knows she is going to have "a hard time" she drives straight to her mom's house for help.[3] (AR 74.)

At the time of the hearing, Petitioner testified that she was better but that one to two days a week she still was "moderately to severely incapacitated" by her migraines. (AR 67.) Petitioner testified that she is "trying to be as normal as possible" and that she takes her children to all of their doctor's appointments, whether it is her week or her ex-husband's week with them. (AR 65.) She also noted "there's a lot of driving." (AR 65.) She can dress and bathe herself (AR 67), and do her own laundry (AR 69). She acknowledged that her mother and boyfriend are not available to help all the time, so if she has a severe headache, and they are not available, she has to manage as best she can.[4] She said she "has to manage" because she has "to take care of [her] kids", particularly because she has two "special needs kids." (AR 73.) That Petitioner is managing, at

---

[2] Petitioner's mother submitted a report stating she helps Petitioner with "cooking, house cleaning, laundry [and] running the boys around." AR 205.

[3] After Petitioner's divorce, she was ill and her mother came and stayed with her for a time to help. (AR 60.) *See also* AR 203 (Petitioner's mother submitted a Third Party Function Report stating she had been staying with Petitioner for more than a month to help her.).

[4] Petitioner also described that she is "able to get up and function to a level where I can on most days take care of my kids," she explained that "[e]ven if it's taking care of them minimally, I'm able to get out of bed." (AR 49.)

**MEMORANDUM DECISION AND ORDER - 10**

times, without help, when she has a severe headache, does not necessarily mean she is functioning at a level where she is capable of working with a severe headache.

Significantly, for purposes of this review, the "Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (citations omitted); *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (explaining that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); *Gallant v. Heckler*, 753 F.2d 1450, 1453-55 (9th Cir. 1984) (noting that the fact the claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled due to constant back and leg pain).

Here, the ALJ's reliance on Petitioner's daily activities does not amount to a clear and convincing reason to find her not entirely credible, where her actual testimony expressed far more limitations than the ALJ captured in his brief paraphrasing of that testimony. For example, she drives her kids to school and volunteers, as the ALJ found, but only when her migraines are not severe. When they are, she relies on others, including her ex-husband, her mother, and her boyfriend, for help. She does have her children with her, but every other week, so she is not driving them to school every day. Petitioner also cooks, as the ALJ found, but she testified she does so only when her symptoms permit and at times she has to have help from others to feed and take care of her children.

The ALJ's paraphrasing of Petitioner's testimony about her limitations was incomplete and thus his assessment that her daily activities undermined her credibility does not amount to a specific, clear, and convincing reason, *see Burrell*, 775 F.3d at 1137, to support his credibility determination.

### 2. Treating Physician

Petitioner contends that the ALJ improperly rejected the opinion of her treating neurologist, Dr. Allen Han, as to the limitations caused by her migraines. Pet.'s Br., p. 12 (Dkt. 13). The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine

**MEMORANDUM DECISION AND ORDER - 12**

nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Additionally, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

*Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Dr. Han is considered a treating physician. He opined that Petitioner's headache symptoms would interfere with her attention and concentration, making her likely to be "off task" at work 25% or more of the typical workday, and that Petitioner would likely be absent from work more than four days per month. (AR 502.) The ALJ concluded that Dr. Han's opinion was entitled to "little weight" because it is "not consistent with the claimant's activities of daily living or the medical evidence of record." (AR 19.) In making such an assessment, the ALJ may take into consideration claimant's daily activities that "involve the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Furthermore, "many home activities are not easily transferrable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Chater*, 885 F.2d 597, 603 (9th Cir. 1989). As discussed above, the ALJ's credibility determination is not supported by specific, clear, and convincing reasons. For the same reasons, and because the ALJ did not discuss the transferability of Petitioner's daily activities to the work setting, the activities described by the ALJ do not undermine Dr. Han's assessment. They also are not inconsistent with Dr. Han's assessment.

The ALJ additionally said that "medical evidence of record" supported his decision to give Dr. Han's assessment "little weight." (AR 19.) However, the ALJ must do more than offer his conclusions. *Embrey v. Brown*, 849 F.2d 418, 421-22 (9th Cir. 1988). He must set forth his own interpretations and explain why they, rather than the physician's, are correct. *Id.* "Broad and vague" reasons for rejecting a treating physician's opinion do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Here, the ALJ did not discuss what "medical evidence" in the record undermined Dr. Han's assessment. Although the ALJ briefly cited to medical records discussing Petitioner's migraines, (AR 18), he did not explain how those records were inconsistent with Dr. Han's opinions. Instead, the ALJ simply summarized that Petitioner had "complained of severe migraine headaches for years," "received treatment in the form of medication," and "presented at the emergency room for migraines." *Id.* He also noted that "a subsequent brain MRI was normal." *Id.* However, nothing in the ALJ's decision connects specific medical records to Dr. Han's assessment to explain why the records are inconsistent with his opinions.

Of note, Dr. Han treated Petitioner for almost three years before he provided his "Headaches Medical Source Statement" on August 31, 2011. *See* AR 316, 500-503. Dr. Han also continued to treat Petitioner after the assessment in that Statement was made, and those visits are part of the medical record in this case. *See, e.g.*, AR 923. Petitioner sought treatment from Dr. Han over 40 times in four years (three visits in 2008; 18 in

2009; 13 in 2010; seven in 2011; and two in 2012). *See* AR 287-319, 356-370, 443-465, 480-484, 923-925. Petitioner also often sought emergency care and utilized myriad procedures and took multiple medications designed to reduce her headaches. *See, e.g.*, AR. 782-876. Dr. Han's records contain reports of the frequency and severity of Petitioner's headaches over the relevant time period. *See, e.g.*, AR. 295 (report of migraine headaches two days per week); AR. 310 (noting 16 headache days per month, 25% of which were severe); AR. 308 (reporting four or five severe headaches per month). Although Dr. Han's medical records are often based on Petitioner's self-report of her headaches, she sought consistent treatment and consistently reported debilitating headaches during her four years being treated by Dr. Han.

In light of this evidence, and the ALJ's unsupported credibility determination, the ALJ did not provide sufficient evidence to support his decision to give "little weight" to Dr. Han's opinions. Perhaps there is sufficient proof in the record that could properly support a negative credibility determination, or a decision to discount the weight of Dr. Han's opinions. But to do so requires an adequate explanation, with sufficient evidence, to meet the legal standard applicable to such a decision. Here, the ALJ's decision is missing those foundational supports. The decision is not specific and does not connect the ALJ's general statements about the medical records to the ALJ's findings. This is compounded by the ALJ's failure to describe accurately Petitioner's testimony about her daily activities, which has some support in those medical records. *See, e.g.*, *Burrell*, 775

F.3d at 1139 (9th Cir. 2014) (noting that the "ALJ never connected the medical record to Claimant's testimony about her headaches").

In short, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Han's opinion. Particularly, the ALJ's conclusory statements do not rise to the level required by *Reddick v. Chater*, which requires that the ALJ set forth the conflicting evidence and explain why his interpretation is valid.

3. **Lay Testimony**

Ms. Carol Hollinger, Petitioner's mother, provided a letter in support of her daughter's claim dated July 17, 2012. (AR. 250.) Ms. Hollinger explained that when Petitioner has a "moderate" headache she performed her duties "at a minimum, " and that when Petitioner has a severe headache, it is incapacitating and she needs a "pain shot [and to] go to bed," at which time someone must step in and watch the kids. *Id.*

The ALJ provided "little weight" to Ms. Hollinger's report, finding it inconsistent with Petitioner's "admitted ability to perform daily activities". (AR. 19.). Petitioner argues that the ALJ failed to properly evaluate Ms. Hollinger's statements, and that they are "completely consistent with Ms. Sanders' testimony, Dr. Han's opinion, and the medical evidence of record in describing variable levels of functioning, with incapacitating headaches on a regular basis." (Dkt. 13, pp.19-20.) The Court agrees that Ms. Holligner's statements are consistent with Petitioner's testimony as to the varying levels of Petitioner's ability to function.

**MEMORANDUM DECISION AND ORDER - 17**

To discount lay witness opinion evidence, an ALJ must give reasons germane to each witness. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053-54 (9th Cir. 2006) (explaining that the ALJ's reasons for rejecting lay testimony must be specific). Here, the ALJ did not do so because he relied on his improper credibility assessment to support his decision to give Ms. Hollinger's testimony little weight.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

However, here, the ALJ did not properly consider all of the evidence. His reason for finding Petitioner to have limited credibility in testifying to her limitations was based on the ALJ's generalization of her ability to perform daily activities, without connecting those activities and the varied ability to engage in them to a workplace setting. He also gave improper reasons for rejecting the opinion of Dr. Han, a treating physician, because he did not connect Dr. Han's opinion to any particular inconsistent "medical evidence of record." *See* AR. 19. A treating physician's opinion is entitled to more weight than that of a consultative physician. At the very least, the ALJ must provide specific and legitimate reasons for rejecting Dr. Han's opinion, and he has not done so here.

This is not to say that this Court conclusively finds that Petitioner is disabled. Relatedly, it is not for this Court to resolve the question of whether Petitioner is disabled when considering all the relevant medical evidence and how Dr. Han's opinions, Petitioner's actual testimony, and her mother's statements, may factor into the ALJ's determination. Rather, the Court is tasked with reviewing the basis of the ALJ's decision, highlighting those areas that may call into question the decisions reached by the ALJ, and, in doing so, should not be misunderstood as substituting its own judgment for that of the ALJ's.

The Court finds the cumulative nature of the ALJ's decision does not afford the Court confidence that the ALJ fairly considered all the evidence in the record, at least how it is reflected in the ALJ's decision. This action is therefore remanded to allow the ALJ to revisit the opinion of Dr. Han, the statement of Petitioner's mother, and Petitioner's testimony and how it impacts her credibility. In other words, because the Court has doubts as to whether Petitioner is, in fact, disabled, *see Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014), this case is remanded to the ALJ for further proceedings on an open record. On remand, the ALJ is not required to credit as true Petitioner's testimony, Dr,. Han's assessment, or any other evidence. *Burrell v. Colvin*, 775 F.3d 1133, 1135 (9th Cir. 2014).

## V. ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **March 23, 2015**.

Honorable Ronald E. Bush
U. S. Magistrate Judge